JAMES M. KEMPER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64353.    Filed June 9, 1958.

*Charles C. Shafer, Jr., Esq.*, and *Lancie L. Watts, Esq.*, for the petitioner.
*Claude R. Sanders, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in the petitioner's income tax, as follows:

| Year | Deficiency |
|---|---|
| 1952 | $7,365.18 |
| 1953 | 10,303.51 |
| 1954 | 21,343.28 |

Certain issues have been settled through concessions by the parties. The remaining issue before this Court is whether the petitioner is entitled to a casualty loss deduction under section 165 (c) (3) of the Internal Revenue Code of 1954 in the year 1954 by reason of the loss of 17 trees on his residential property.

### FINDINGS OF FACT.

James M. Kemper, the petitioner, is a resident of Kansas City, Missouri. He filed his Federal income tax return for the year 1954 with the district director of internal revenue for the sixth district of Missouri at Kansas City, Missouri.

Petitioner purchased his present residence in 1929 for a consideration of $100,000 and since that time he has added improvements at an approximate cost of $100,000. The residential property consists of approximately 6 acres of land or roughly, 1 city block, and a 2½-story brick and limestone house. The property was landscaped by quite a number of trees, including elm, maple, oak, larch, spruce, pine, and walnut. The house has 30 rooms, a 4-car garage, a swimming pool and locker rooms, a patio, and 2 formal gardens. There is an ornamental iron fence along the front of the property and the balance of the property is enclosed by a chain-link fence. The house is a mansion-type residence and it is located in one of the exclusive residential neighborhoods of Kansas City.

During the year 1954 there was a severe drought in Missouri, as well as in several other western States, and on August 2, 1954, the State of Missouri was designated as a drought disaster area by the President of the United States. Drought conditions also existed in this area in 1952 and 1953.

During the year 1954 the following trees located on petitioner's property died: 2 American elm, 1 Austrian pine, 1 dwarf pine, 1 Scotch pine, 1 Colorado spruce, and 11 Norway spruce.

Temperature, humidity, and the water table, as well as the amount of rainfall, are important in determining the effect of drought on trees. Trees properly watered can withstand the effects of a drought. American elm trees are among the most drought-resistant trees in the Kansas City area. Phloem necrosis is a virus disease that attacks only the American elm tree. This disease is carried by the elm bark beetle into the tree and the disease spreads from the point of invasion by the beetle. Such invasion usually occurs in the spring or in the fall. If it occurs in the fall, the first apparent symptoms of the virus disease would be noticeable about the first of May in the form of yellowing leaves which later turn brown. If the entire tree were

infected, the tree would probably die within 2 or 3 weeks after the appearance of the first symptoms. If only part of an elm tree is infected with phloem necrosis, it will last for several years. Bark separations also indicate presence of phloem necrosis. Phloem necrosis will attack elm trees whether or not they are affected by drought. There was evidence of bark separations on the petitioner's elm trees which died in 1954.

Petitioner's elm, pine, and spruce trees, which died in 1954, were found to be infected with beetles and borers in that year. These insects can be a contributing factor to the death of such trees. Beetles and borers will attack a tree whether or not it is affected by drought.

Petitioner claimed a casualty loss deduction in 1954 in the amount of $12,500 for the loss of 17 trees.

OPINION.

The issue before us is whether the petitioner is entitled to a casualty loss deduction under section 165 (c) (3) of the Internal Revenue Code of 1954 for the loss of 17 trees on his residential property which were destroyed in 1954. This section allows individuals a deduction for "losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." It is petitioner's contention that the 17 trees were killed by the drought in 1954, and that such drought qualifies as a "casualty" within the meaning of the pertinent section.

Petitioner's argument is that the trees died of drought and that the drought condition portrayed by the evidence qualifies as a "casualty" within the statute. In *Ray Durden*, 3 T. C. 1, we define the term "casualty" as it appeared in the antecedent statute (sec. 23 (e) (3), I. R. C. 1939), saying:

Under the doctrine of *ejusdem generis*, it is necessary to define the word "casualty" in connection with the words "fires, storms, shipwreck" immediately preceding it. "Casualty" has been variously defined, including "an undesigned, sudden and unexpected event"—Webster's New International Dictionary; also as "an event due to some sudden, unexpected or unusual cause"—*Matheson* v. *Commissioner*, 54 Fed. (2d) 537. The term "casualty" "excludes the progressive deterioration of property through a steadily operating cause." *Fay* v. *Helvering*, 120 Fed. (2d) 253; also, "an accident or casualty proceeds from an unknown cause or is an unusual effect of a known cause. Either may be said to occur by chance and unexpectedly." *Chicago, St. Louis & New Orleans Railroad Co.* v. *Pullman Southern Car Co.*, 139 U. S. 79. * * *

Whether under the application of the doctrine of *ejusdem generis* a "drought" would be a casualty in the sense that it would be an event of the same general nature or kind as a "fire, storm, or shipwreck" is a question that is not free from doubt. In *Buttram* v. *Jones*, 87 F. Supp. 322, where the casualty loss claim was for trees that died in a

drought, there is this statement: "The unprecedented and unusual drought is a 'casualty' within the meaning of Section 23 (e) (3) of the Revenue Act of 1936."

In *Winters, Jr.* v. *United States*, — F. Supp. — (D. C. Okla., Jan. 2, 1958), it was held the taxpayer suffered a casualty loss under said section 165 when "certain plants" around his residence died as a result of the drought of 1954.

The statement in the *Buttram* case is probably dictum, for the judgment against the taxpayer was based on no evidence of loss. There is nothing very sudden about the death of a large plant like a tree when the cause is drought. The expert evidence in this case shows it generally takes severe drought conditions, continuing for several years, to kill a tree. For the purpose of deciding this case we can pass the question for we are of the opinion petitioner failed in his burden of proving that the drought killed the trees.

The only witness who testified the trees died of drought was Norman Klein, who testified that he was an arborist and that he had been employed by petitioner for about 20 years "to take care of his trees." He said he usually inspected them three times a year and that he had inspected them "several times during 1954." He could not recall when he had inspected the trees in 1954 prior to the time he was called to petitioner's home to examine the dead trees and determine the cause of death. The record shows he was called to examine 14 dead trees in June of 1954 and 3 dead trees in August 1954.

There was evidence to the effect that there had been a drought in this area, not only in 1954, but also in the years 1952 and 1953. Without giving any basis for his conclusion, Klein gave it as his opinion, that the trees died of drought. Later he said drought was the "primary" cause. He said he examined some, but not all of the dead trees, and he found some separation of the bark, indicating phloem necrosis and some tunneling around in the bark indicating some beetle activity, and there were some borers. He said the other trees on petitioner's property were not affected by the drought but he added they were growing in lower places. Many of the pictures of the stumps that are in evidence show growing trees nearby. Petitioner testified he had watered the trees abundantly in the year 1954. Klein's examination of the trees to determine the cause of death was most superficial. He made no microscopic or laboratory examination.

Petitioner argues that because Klein said drought was the cause of death and there is no evidence of any other cause, then we must determine that drought was the cause of death of the trees. But Klein's testimony was opinion evidence. It was admissible but its probative value rests on the facts upon which it is based. He gave nothing to support his conclusion and much of his testimony as to the facts he found, weakened his conclusion. It appears to rest on no more than

knowledge that the area was suffering drought conditions. He found 17 dead trees and examined some of them and he found them infected with beetles, borers, and phloem necrosis, and testified all 17 trees died of drought, even though neighboring trees were unaffected by drought.

Respondent's expert witness, L. J. Gier, a botanist with graduate study in plant pathology, said it would take a drought of several years to kill a tree adapted to the Kansas City area. He told of the necessity for a microscopic examination and detailed analysis of the trunk and roots in order to determine the cause of death of a tree. He said that before trees would die in a drought "you must have a lowered water table, which we did not have." There was some evidence that the water table was lower in 1954 than 1953 but no evidence that it had sunk below the reach of the roots of trees adaptable to the Kansas City area.

From a study of all of the evidence in the case we hold it is insufficient to warrant a determination that petitioner's trees were killed by drought.

The result of our determination is that petitioner has failed to establish his loss was due to any casualty entitling him to the deduction allowed by section 165 (c) (3), I. R. C. 1954. This decides the issue and we need not discuss the evidence designed to establish the amount of the loss. We will comment, however, that the photographs in evidence indicate the property was rather heavily covered with trees of many kinds. The measure of loss is the fair market value of the property before and after the loss. *Western Products Co.*, 28 T. C. 1196. Evidence of amount of loss when applied to loss of trees is at best highly speculative. Here the evidence shows that 16 of the trees had a trunk diameter ranging from 4 to 14 inches and one American elm had a diameter of 48 inches. No one bothered to count the year rings but the evidence of Klein was that an elm had an average life of about 60 years. The appraiser who put the loss at $12,500 never saw the trees when they were alive. There is but little foundation for his opinion and the entire record would indicate the loss of only 17 trees from the great number on this property would result in no more than nominal damages.

*Decision will be entered under Rule 50.*