James M. KEMPER, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16108.

United States Court of Appeals
Eighth Circuit.

July 10, 1959.

Charles C. Shafer, Jr., Kansas City, Mo., for petitioner.

S. Dee Hanson, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., were with him on the brief), for respondent.

Before SANBORN, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

James M. Kemper, petitioner herein, seeks review of a decision of the Tax Court of the United States whereby the Tax Court upheld a deficiency in Kemper's income tax in the amount of $10,-300.35 for the year 1954. Jurisdiction is invoked under § 7482(a), I.R.C., 26 U.S. C.A. (I.R.C.1954) § 7482(a). The findings of fact and opinion of the Tax Court are reported in 30 T.C. 546. The basic issue is whether the Tax Court committed error in denying petitioner a casualty loss deduction of $12,500.00 under § 165 (c)(3) of the Internal Revenue Code of 1954 by reason of the loss of 17 trees on his residential property. 26 U.S.C.A. (I.R.C.1954) § 165 provides:

"*(a) General rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

"*(c) Limitation on losses of individuals.*—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \* \*

"(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. \* \* \*"

It is petitioner's primary contention that, as a direct result of severe drought conditions in Kansas City, Missouri, during the summer of 1954, he lost 17 trees from his residence and that such loss is a "casualty" within the purview of the foregoing section. Holding that it was not necessary in this case to determine whether or not true loss by drought was a proper deduction under the statute, the Tax Court concluded:

"For the purpose of deciding this case we can pass the question for we are of the opinion petitioner failed in his burden of proving that the drought killed the trees."

At the beginning, we are met with the primary question of whether the Tax Court's holding that "petitioner failed in his burden of proving that the drought killed the trees" is clearly erroneous. This is a fact determination so that the jurisdiction of this as a reviewing court is strictly limited. 26 U.S.C.A. (I.R.C.1954) § 7482, giving the Courts of Appeals exclusive jurisdiction to review the decisions of the Tax Court, provides that such review shall be "\* \* \* in the same manner and to the same extent as decisions of the district court in civil actions tried without a jury; \* \* \*." Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A provides that:

"Findings of facts shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

It is beyond cavil that we, as a reviewing court, may not retry issues of fact, that we are not the judges of the credibility of the witnesses, that the findings of the Tax Court are presumptively correct, and that the burden rests with the petitioner to show that such findings are "clearly

erroneous" before this court may set them aside. United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147; Joe Balestrieri & Co. v. Commissioner, 9 Cir., 1949, 177 F.2d 867, 873; Grace Bros. v. Commissioner, 9 Cir., 1949, 173 F.2d 170, 173–174.

The record indicates as follows: Petitioner purchased his home in Kansas City, Jackson County, Missouri, in 1930, at a cost of $100,000.00. Up until 1954, the year in question, he had added an additional $100,000.00 in improvements. His residence is of the mansion type located in an exclusive residential neighborhood of Kansas City and occupies about five acres of land. The house has 30 rooms, a four-car garage, a swimming pool and locker rooms, a patio and two formal gardens. The property was landscaped by numerous trees, including elms, maples, oaks, larch, spruce, pine and walnut. There is an ornamental fence along the front of the property and the remainder is enclosed in a chain-link fence.

In 1952 and 1953 drought conditions existed in Missouri and other western states. On August 2, 1954, the President of the United States recognized the severity of the continued drought and designated Missouri a drought disaster area.

During the year 1954 petitioner suffered the loss of the following trees on his property: 2 American elm, 1 Austrian pine, 1 Dwarf pine, 1 Scotchpine, 1 Colorado spruce, and 11 Norway spruce. For these trees petitioner claimed a $12,500.00 casualty loss on his 1954 income tax return.

The fact question revolves mainly about the testimony of two witnesses, Norman Klein, who testified in behalf of petitioner, and L. J. Gier, whose testimony was introduced by the respondent. Klein is an arborist and the owner of a company called Midwest Tree Experts, whose work consists of pruning and spraying trees. For approximately 20 years he had been employed by the petitioner "to care for his trees and do anything which would keep them in best condition". He was familiar with petitioner's trees in 1954 and prior thereto. In connection with the testimony of the witness Klein, the Tax Court stated:

"The only witness who testified the trees died of drought was Norman Klein, who testified that he was an arborist and that he had been employed by petitioner for about 20 years 'to take care of his trees.' He said he usually inspected them three times a year and that he had inspected them 'several times during 1954.' He could not recall when he had inspected the trees in 1954 prior to the time he was called to petitioner's home to examine the dead trees and determine the cause of death. The record shows he was called to examine 14 dead trees in June of 1954, and three dead trees in August, 1954.

"There was evidence to the effect that there had been a drought in this area, not only in 1954, but also in the years 1952 and 1953. Without giving any basis for his conclusion, Klein gave it as his opinion, that the trees died of drought. Later he said drought was the 'primary' cause. He said he examined some, but not all of the dead trees, and he found some separation of the bark, indicating phloem necrosis and some tunneling around in the bark indicating some beetle activity, and there were some borers. He said the other trees on petitioner's property were not affected by the drought but he added they were growing in lower places. Many of the pictures of the stumps that are in evidence show growing trees nearby. Petitioner testified he had watered the trees abundantly in the year 1954. Klein's examination of the trees to determine the cause of death was most superficial. He made no microscopic or laboratory examination.

"Petitioner argues that because Klein said drought was the cause of death and there is no evidence of

any other cause, then we must determine that drought was the cause of death of the trees. But Klein's testimony was opinion evidence. It was admissible but its probative value rests on the facts upon which it is based. He gave nothing to support his conclusion and much of his testimony as to the facts he found, weakened his conclusion. It appears to rest on no more than knowledge that the area was suffering drought conditions. He found 17 dead trees and examined some of them and he found them infected with beetles, borers and phloem necrosis, and testified all 17 trees died of drought, even though neighboring trees were unaffected by drought."

L. J. Gier, respondent's expert witness, is a professor of biology and head of the Department of Biology of William Jewell College. Of Gier's testimony, the Tax Court stated:

"Respondent's expert witness, L. J. Gier, a botanist with graduate study in plant pathology, said it would take a drought of several years to kill a tree adapted to the Kansas City area. He told of the necessity for a miscroscopic examination and detailed analysis of the trunk and roots in order to determine the cause of death of a tree. He said that before trees were to die in a drought 'you must have a lowered water table, which we do not have.' There was some evidence that the water table was lower in 1954 than 1953, but no evidence that it had sunk below the reach of the roots of trees adaptable to the Kansas City area."

The record amply supports these statements with reference to the two expert witnesses.

In addition to the testimony of Klein and Gier, the petitioner himself testified that:

"In 1954, I watered my trees, and my shrubbery, and used a good deal of water on them. I am not a tree expert but I know this from the little experience I have had in connection with the lumber company that I was interested in that trees can die here from a drought or from other cause and the trees right next to it will keep on living. I don't keep a diary or record of my trees and shrubbery and I don't know on what date my first tree died. I don't know what kind of tree was the first one that died. I know the trees started fading. It was a terribly hot summer, about the worst one I had experienced. I don't know on what date the last tree died."

Pointing out that Gier had never seen petitioner's home nor the 17 trees involved, that if he had had the advantage of personal observation his testimony might have been different, and that his testimony was theoretical in nature, petitioner claims that it could not be considered by the Tax Court. Petitioner states:

"This is true since the appellee's counsel failed to ask any hypothetical questions upon which Gier could express an opinion. Just because he might be considered an expert does not permit him to testify—with acceptance by the court—unless he has *personal knowledge of the facts* in the case, or unless the *facts are presented as a foundation for a hypothetical question.* Neither situation existed in this case. He knew not the facts, nor was he asked a single hypothetical inquiry."

With reference to Klein's testimony, petitioner contends:

"It is clear that when the only direct evidence is given by one side, and such evidence is not impeached by any other witness or by cross-examination, then the Court must find for the party producing such evidence."

■ First, with reference to Dr. Gier; he testified that watering trees would prevent drought damage; that in order to determine and identify the cause of

death of a tree one must make a complete examination, microscopic and otherwise, of all the parts thereof; that insects and disease might well attack a tree with or without the presence of drought, the former being more likely to cause the death of a tree than drought in the Kansas City area; that "if trees were properly watered, a drought would not kill them" and that "if we had a drought damage it can be avoided by proper watering". He stated:

> "I am familiar with the trees of this area and with the environmental condition in which the trees in this area grow. The water table and the soil, the temperature, and humidity are important in determining the effect of drought on trees as well as the lack of rainfall. In my opinion, a drought of several months or a year is not likely to kill a tree which is adapted to this area. It would take a drought of several years to kill such a tree."

We think the testimony of Dr. Gier was sufficiently related to the prior testimony to justify the court's receipt of his expert opinion. Additionally, there was no objection to his testimony at the time of trial. We think it was properly received and that the Tax Court was entitled to give it consideration.

 The testimony of the two main witnesses here is conflicting. Each was an expert testifying in a field in which he had prepared himself to render expert advice. Klein saw the property in question, including the 17 trees, before and after their destruction but the Tax Court found that his examination was not extensive and that his expert opinion lacked sufficient basis for them to accept it fully. Gier's testimony was general in nature, having to do with the drought of 1952, 1953 and 1954 and the trees in the general vicinity of petitioner's. He could not and did not attempt to testify to the cause of the destruction of the trees. For the finder of the facts, an expert's testimony is purely advisory. The Tax Court could accept it or reject it. The

Tax Court here, as the finder of the facts, was also the judge of the credibility of the witnesses and it was its prerogative to determine the weight that should be given the testimony of the petitioner himself and the two experts. Considering the record as a whole, we cannot say that the findings of the Tax Court are "clearly erroneous", nor reviewing "the entire evidence" are we "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 365, 395, 68 S.Ct. 542, rehearing denied 333 U.S. 869, 68 S.Ct. 788. The Tax Court's conclusion that petitioner failed in his burden of establishing that his trees were killed by a severe drought in 1954 may not be set aside.

Petitioner also urges that the Tax Court failed to rule on his "alternative contention" set forth in paragraph 2(aa) of the amendment to his original complaint, contending that the court might find the death of his trees due to the sudden effect of disease and/or insects and that such constitutes a casualty loss within the meaning of § 165(c)(3), I.R.C. 1954. We do not agree. The Tax Court did rule on the alternative contention. It stated at the outset:

> "The issue before us is whether the petitioner is entitled to a casualty loss deduction under section 165 (c)(3) of the Internal Revenue Code of 1954 for the loss of 17 trees on his residential property which were destroyed in 1954."

The opinion then proceeds to discuss the evidence, to include that which the petitioner contends supported his primary contention that drought caused the destruction of his trees. Additionally, the court considered the testimony regarding disease, beetles and borers as offered by Klein, who nevertheless gave it as his expert opinion that drought was the "primary" cause. The Tax Court then concluded:

> "From a study of all of the evidence in the case we hold it is insuffi-

cient to warrant a determination that petitioner's trees were killed by a drought.

"The result of our determination is that petitioner has failed to establish his loss was due to *any* casualty entitling him to the deduction allowed by section 165(c)(3), I.R.C. of 1954." (Emphasis supplied.)

The Tax Court then states:

"This decides the issue * *," the issue being, as stated in the beginning of the opinion, whether or not the petitioner was entitled to a casualty loss deduction. We think it clear, therefore, that the Tax Court did decide the alternative contention. An examination of the evidence convinces us that their conclusion must be upheld.

It must not be overlooked that the burden here was upon the petitioner to establish his right to the deduction. The Supreme Court, in Interstate Transit Lines v. Commissioner of Internal Revenue, 1943, 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607, rehearing denied 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489, referred to "* * * the now familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348; Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416", and stated in Deputy v. Du Pont, 1940, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416, that the "* * * allowance of deductions from gross income does not turn on general equitable considerations." We must conclude here that the Tax Court's finding that the petitioner failed to establish his loss was due to *any* casualty was not clearly erroneous and we are not left with the definite and firm conviction that a mistake has been committed. The Tax Court arrived at permissible conclusions and must be affirmed.