NORMAN H. AND BETTY L. RUECKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ruecker v. Commissioner
Docket No. 1972-80.
United States Tax Court
T.C. Memo 1981-257; 1981 Tax Ct. Memo LEXIS 487; 41 T.C.M. (CCH) 1587; T.C.M. (RIA) 81257; May 27, 1981. Norman H. Ruecker, pro se. Daniel P. Ramthun, for the respondent. DAWSON
MEMORANDUM FINDINGNS OF FACT AND OPINION DAWSON, Judge: Respondent *488 determined a deficiency in petitioner's Federal income tax for the year 1977 in the amount of $ 953. The only issue presented for our decision is whether the loss of ornamental plants and shrubs caused by a severe drought is a deductible casualty loss within the meaning of section 165(c)(3). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Norman H. Ruecker and Betty L. Ruecker (petitioners) are husband and wife, who resided in San Rafael, California at the time they filed their petition in this case. San Rafael is located in Marin County which is immediately north of San Francisco. Marin County is an area of marginal rainfall, receiving it mostly in the winter from November through February. Water is supplied to all residents by the Marin Municipal Water District from a system of five reservoirs which are designed to capture enough rain water run-off to serve the population for one year *489 without depleting the reservoirs to a point where the following year's rainfall would be insufficient to meet the county's needs. Petitioners built their home in Marin County in 1970 on previously bare hillside property. During the subsequent six years they substantially landscaped the property with trees, shrubs, plants and lawn. They also installed twelve separate irrigation systems, each with five to twelve sprinkler heads operated automatically by time clocks. Each system routinely ran for 20 to 30 minutes a day, every other day, during the spring and summer months. During 1976 and 1977 there was a severe drought in Marin County. The capacity of the reservoir system had been based on one of the worst droughts of record which lasted from 1929 through 1933. The only other drought as severe as the one in 1976 and 1977 occurred between 1864 and 1868. Various voluntary water conservation measures were suggested by the Marin Municipal Water District during 1976, but petitioners continued using their extensive irrigation system throughout the entire year. As the drought continued into its second year, the Marin Municipal Water District instituted on February 11, 1977 very *490 stringent water rationing rules. Each home in the county was allowed to consume only a certain number of gallons of water per day. A family of four, like the petitioners' family, was permitted to use only 148 gallons per day. Marin County residents had to adjust their living habits to this situation. Because normal toilet usage alone consumes about 100 gallons per day, most families flushed their toilets only once a day. Washing machine water was often used twice and, along with shower water, was saved for garden purposes. Under these draconian water rationing rules the petitioners could not use their irrigation system. On February 11, 1977 the petitioners' lawn, shrubs, and plants were alive and healthy. By June of 1977, without the use of the sprinklers, the lawn, plants and shrubs had withered and died. The decrease in the fair market value of petitioners' property as a result of the drought was $ 2,000. They claimed a casualty loss in that amount on their Federal income tax return for 1977, and it was disallowed by the respondent. OPINION We must decide whether the petitioners are entitled to a casualty loss deduction under section 165(c)(3) for the death of the *491 plants, shrubs and lawn caused by the drought. Section 165(a) allows a deduction for any loss sustained during the taxable year which is not compensated for by insurance or otherwise. Section 165(c)(3) limits such losses for individuals to: Losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * Such losses are allowed only to the extent that they exceed $ 100 for each casualty. The legislative policy behind section 165(c)(3) was "to allow the deduction only of those losses which may be considered extraordinary, nonrecurring losses, and which go beyond the average or usual losses incurred by most taxpayers in day-to-day living." S. Rept. No. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 505, 561. To come within this section the petitioners must prove that the loss of their shrubs and plants resulting from the drought is an "other casualty." Although the term "other casualty," standing alone, might be susceptible to broad interpretation, the courts have narrowed its scope by applying the doctrine of ejusdemgeneris. Maher v. Commissioner, 76 T.C. No. 50 *492 (April 8, 1981). Under this doctrine it is necessary to interpret the word "casualty" as analogous to "fire, storms [and] shipwreck," the words which immediately precede it in the statute. The word has been held to denote "an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause." Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941). A casualty "proceeds from an unknown cause or is an unusual effect of a known cause. Either may be said to occur by change and unexpectedly." Chicago, St. Louis & New Orleans Railroad Co. v. Pullman Southern Car Co., 139 U.S. 79, 86 (1891). The identifiable event must be sudden in the sense of being swift or precipitous rather than gradual or progressive. Matheson v. Commissioner, 54 F.2d 537, 539-40 (2d Cir. 1931). However, the term "sudden" is comparative and each case must turn on its own facts. Maher v. Commissioner, 76 T.C. No. 50, n. 16 (April 8, 1981); Hoppe v. Commissioner, 42 T.C. 820, 823 (1964), affd. 354 F.2d 988 (9th Cir. 1965); Kilroe v. Commissioner, 32 T.C. 1304, 1306 (1959); *493 Denton v. Bingler, 12 AFTR 2d 5732 63-2 USTC par. 9731 (W.D. Pa. 1963). There have been several cases concerning whether a loss occasioned by a severe drought can constitute a casualty within the meaning of section 165(c)(3). In Buttram v. Jones, 87 F. Supp. 322 (W.D. Okla. 1943), the District Court held that an unprecedented and unusual drought is a casualty within the meaning of section 23(e)(3) of the Revenue Act of 1936, the predecessor of section 165(c)(3), and that the resulting losses to the taxpayer's trees and shrubs could be deducted. Deductions were also allowed under section 165(c)(3) on similar facts in Winters v. United States, 58-1 USTC par. 9205, 1 AFTR 2d 644 (N.D. Okla. 1958), rev'd. on other grounds 261 F.2d 675 (10th Cir. 1958), cert. denied 359 U.S. 943 (1959), and Pantzer v. United States, 64-2 USTC par. 9641, 14 AFTR 2d 5352 (S.D. Ind. 1964). And in Maurer v. United States, 284 F.2d 123 (10th Cir. 1960), revg. and remanding on other grounds 178 F. Supp. 223 (D. Kan. 1959), the Tenth Circuit held that where taxpayers suffered losses *494 of trees and shrubs on their residential grounds as a severe drought and the "casualty loss having been established by the special verdict of the jury * * * it is deductible under Section 165 * * *." Two cases have come before this Court involving the question of whether a drought is a casualty within the meaning of section 165(c)(3) and its predecessor, section 23(e)(3) of the Internal Revenue Code of 1939. Both cases, however, were decided on other grounds. Kemper v. Commissioner, 30 T.C. 546 (1958), affd. 269 F.2d 184 (8th Cir. 1959) (Failure to prove causality between the drought and the death of certain trees.); Broido v. Commissioner, 36 T.C. 786 (1961) (Failure to prove that any economic loss was actually sustained.)[2]
Respondent's position on whether *495 damages resulting from a drought are deductible by individuals as casualty losses has been somewhat ambiguous. Rev. Rul. 54-85, 1954-1 C.B. 58, states that relatively rapid and severe subsoil shrinkage resulting from an unusually severe drought which weakened residential building foundations constituted a casualty under section 23(e)(3) of the Internal Revenue Code of 1939. [3] But in Rev. Rul. 66-303, 1966-2 C.B. 55, the Internal Revenue Service stated that where a prolonged drought causes damage or loss from progressive deterioration, as in the case of ornamental trees or shrubs progressively affected and ultimately killed by a lack of water, such losses are not deductible under section 165(c)(3) after January 1, 1966. That ruling does permit taxpayers who have suffered damage to or loss of their property from an unusual and unprecedented losses as casualty losses under section 165(c)(3). In Rev. Rul. 76-521, 1976-2 C.B. 44, the Commissioner reiterated his strict position that drought related losses would never be considered casualty losses under section 165(c)(3), although he acknowledged that such losses might qualify *496 under section 165(c)(1) or (c)(2) if incurred with respect to a trade or business or a transaction entered into for profit. One year later in Rev. Rul. 77-490, 1977-2 C.B. 64, the Commissioner reversed his strict position and modified Rev. Rule. 76-521, supra, to permit drought losses in some cases to qualify under section 165(c)(3). Generally, where a drought loss in sustained through the progressive and gradual deterioration of the property, a taxpayer cannot meet the "suddenness" standard for the loss to be considered a casualty within the meaning of the statute. However, on the particular facts of this case, we conclude that petitioners are entitled to deduct their drought related loss under section 165(c)(3). Here the undisputed facts clearly demonstrate that Marin County in 1977 suffered its worst drought since 1868; [4] that petitioner's plants and shrubs were healthy on February 11, 1977 because they were irrigated; that thereafter a municipal ordinance prohibited the *497 watering of plants; that by June of 1977 all of the lawn, plants and shrubs had died as a direct result of the drought; and that the economic loss to petitioners was $ 2,000. We think that the withering and desiccation of the plants which took place in the three to four month period was not a progressive or gradual deterioration. The death of the plants was relatively rapid, i.e., sudden. See Farber v. Commissioner, 57 T.C. 714 (1972); Kilroe v. Commissioner, 32 T.C. 1304 (1959); Cate v. Commissioner, T.C. Memo. 1962-214; Denton v. Bingler, 12 AFTR 2d 5732, 63-2 USTC par. 9731 (W.D. Pa. 1963). It resulted swiftly and directly from an extraordinarily calamitous drought. There were no other superseding causes. As such, the damages sustained by the petitioners qualify as casualty losses. *498 Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue, unless otherwise indicated.↩
2. But see Cox v. Commissioner, T.C. Memo. 1965-5↩, where the Commissioner apparently conceded that the death of the taxpayer's plant and shrubs as a result of a drought and a freeze was a casualty under section 165(c)(3); he argued unsuccessfully only that the taxpayer failed to prove the loss actually occurred in the year claimed.
3. See e.g., Elliott v. United States, 67-1 USTC par. 9232, 19 AFTR 2d 665 (E.D. Mo. 1966); Charno v. Commissioner, T.C. Memo. 1971-22↩.
4. Although not cited by either party, we note that Rev. Rul. 77-490, 1977-2 C.B. 64, announced that California suffered a drought on or after January 20, 1977, of sufficient severity to warrant disaster assistance by the Federal Government under the Disaster Relief Act of 1974, 42 U.S.C. sec. 5121 et seq.↩