JAMES J. PRYOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pryor v. Commissioner
Docket No. 8595-81
United States Tax Court
T.C. Memo 1983-695; 1983 Tax Ct. Memo LEXIS 93; 47 T.C.M. (CCH) 386; T.C.M. (RIA) 83695; November 23, 1983. *93 Held: Petitioner failed to prove that damage to a concrete slab supporting his mobile home and forming a patio was due to a casualty within the meaning of section 165(c)(3), I.R.C. 1954. James J. Pryor, Pro se. Bonnie L. Cameron, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $1,616.20 in petitioner's 1976 Federal income tax. [1] After concessions, *94 the issue for decision is whether petitioner, James T. Pryor, is entitled to a casualty loss deduction in 1976. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner, James J. Pryor, (Petitioner), at all times pertinent hereto, was a dentist and resided in Augusta, Ga. at the time the petition was filed. Petitioner timely filed his 1976 Federal income tax return with the Internal Revenue Service Center, Chamblee, Ga.
In June 1966 petitioner purchased a waterfront lot located within the Clark Hill Reservoir area at Modoc, McCormick County, S.C. The lot sloped rather steeply from a road up the hill down to the water. In June 1969 petitioner made arrangements with Major Byron McGuire (McGuire), to construct a concrete slab part way down the slope large enough to place a mobile home on it and provide a patio attached to the rear of the home overlooking the water. McGuire was *95 a retired Air Force pilot who had a land clearing business of his own nearby. The concrete slab constructed by McGuire was 60-70 feet wide, about four inches thick and was deep enough to contain the mobile home on the uphill side and provide a patio about 12 feet deep clear across the width of the mobile home on the downhill side. A retaining wall about five feet high and constructed with concrete blocks was built under the downhill edge of the slab to support the slab. Concrete block side walls were also built from the ground up to the side edges of the slab and connecting to the retaining wall. The sloping ground under the mobile home was leveled off, a layer of sand was spread on it, and that part of the slab supporting the home was placed on the leveled area.Because of the steep slope of the land a cavity was left under the patio portion of the slab. This cavity, enclosed by the retaining wall and the two side walls, was filled with sand to support the patio and the patio slab rested on the sand and the walls. This sand was compacted with a scraper and a roller. There is some uncertainty whether "weepholes" to let water drain out were left in the walls but a "French" drain *96 outlet was installed. The front of the mobile home was on the uphill side of the slab. An asphalt driveway was constructed from the road down to a leveled off parking area in front of the house. An asphalt curbing was constructed at the downhill end of the parking area to divert water coming down the hill to the sides of the home. A 3-1/2 foot retaining wall was built between this curb and the home across the front of the house. The sloping area between the driveway curb and the retaining wall was filled with sand and ivy was grown thereon. The parking area was sloped slightly to the left to divert water coming down the driveway to the left of the home and down the hill to the reservoir. Petitioner and his wife did not visit the lake cottage frequently in the winter months. When they visited the place in February of 1976, they discovered that the concrete patio slab had cracked and collapsed or settled in places, and the side walls supporting the slab had bulged to the point that they might collapse. They also discovered that a part of the paving in the parking area had settled and that a part of the curbing along the parking area had broken away which permitted water to *97 drain into the sandy, ivy covered, area in front of the mobile home. Petitioner did not remember when he had last been at the mobile home, but assumed that it was probably in November or December of 1975. At that time petitioner did not notice any damage to the patio slab or the parking area. Petitioner did not recall that there had been any unusually heavy rainstroms in the Clark Hill area between November of 1975 and through February of 1976. Rain gauges maintained by the Corps of Engineers near the Clark Hill area indicated that no unusual storm had occurred during that period and that the amount of rainfall was about normal. The retaining wall in front of the mobile home and the method of construction utilized by petitioner allowed water from any source, whether rain or overflow from the parking area, of a combination of both, to percolate down through the sand and ivy area between the parking area and the retaining wall, and to seep under, instead of over, the concrete slab on which the home was placed. The percolation of water through the sand underneath the slab would cause the sand to consolidate and compact, thereby lowering the level of the sand and removing the *98 support the sand gave to the concrete slab. Also, if there were no outlets for the water through the retaining and side walls under the patio, water could percolate through the sand in that area and form pools at the bottom of the cavity under the patio, thereby weakening the support for the patio slab. Petitioner did not claim a deduction for a casualty loss on his income tax return for 1976. The only adjustments to income made in the statutory notice of deficiency concerned unreported interest and dividend income.In his petition filed in this Court petitioner did not dispute those adjustments, but did claim a $20,000 casualty loss deduction for the damage to the concrete slab and the mobil home. Petitioner's appraisers estimated that the decrease in the value of the property caused by the cracking and collapse of the concrete slab was $20,000. Respondent's engineer estimated that in 1976 it would have cost $2,600 to repair the damage. Petitioner had no insurance on the Clark Hill Reservoir property. Nor has he made any claim against McGuire or anyone else for faulty construction of the property. OPINION The sole issue is whether petitioner is entitled to a $20,000 casualty *99 loss deduction in 1976. Petitioner contends that the damage to the concrete slab resulted from a casualty within the meaning of section 165(c). [2] Respondent contends that petitioner has failed to show that the concrete slab was damaged as the result of a casualty within the meaning of section 165(c), or alternatively, that petitioner's loss is limited to the cost of repairing the concrete slab, which is $2,600. We agree with respondent that petitioner has failed to prove that the concrete slab was damaged as a result of a casualty. [3]
Section 165(a) allows a taxpayer to deduct a loss not compensated for by insurance or otherwise. In the case of individuals, section 165(c)(3) provides for the deduction of losses of property not used in a trade or business, or not used for the production of income, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. The term "casualty" as used in the statute means an accident, a mishap, some sudden *100 invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause. Mitchell v. Commissioner,42 T.C. 953, 972 (1964); Fay v. Helvering,120 F.2d 253 (2nd Cir. 1941). Nor is a loss deduction allowed if the damage is due to the ordinary action of the elements upon a poorly constructed building. Matheson v. Commissioner,54 F.2d 537 (2nd Cir. 1931), affg. 18 B.T.A. 674 (1930); Purdy v. Commissioner,T.C. Memo. 1966-186. Petitioner bears the burden of proving that he sustained a casualty within the meaning of section 165(c)(3). Kemper v. Commissioner,30 T.C. 546 (1958); Rule 142(a), Tax Court Rules of Practice and Procedure. He must prove the nature of the casualty, when it occurred, and that the loss was a direct result of the casualty. Purdy v. Commissioner,supra.
In this case petitioner has failed to establish that the damage to the concrete slab was the result of a casualty within the meaning of section 165(c)(3). He has not proven that any sudden, identifiable event occurred that caused the damage to the *101 slab. There is no proof that an unusually large storm or any under ground disturbance occurred that might have caused the slab to creack and collapse. And, petitioner cannot point to any particular time when a "sudden" event occurred which might have caused the damage. He has only shown that when he last saw the property, three or four months before he discovered the damage, he had not observed any creacks or subsistence of the slab. But this does not establish that any identifiable event, similar to a fire, storm or shipwreck, caused the slab to crack and settle. It is quite possible that the cracks occurred within a short period of time but petitioner has failed to prove that the cracks were caused by a "casualty." The most reasonable explanation of how the damage occurred is that because of the steeply sloping terrain and the construction design utilized by petitioner, normal rain water running down the driveway or falling on the ivy had percolated down through the sand under the ivy and seeped through the sand under the slab, thereby consolidating the sand so that over a period of time the sand settled away from the slab and left the slab with no direct support except the walls. *102 The walls themselves may have been weakened, or had additional stress placed on them by this consolidation process, but in any event they were not strong enough along to support the slab, so it began to crack and settle. It is reasonable to believe that when the curbing around the parking area broke away from the pavement this allowed more water into the ivy bed and may have speeded up the process. But there is nothing to indicate that this breaking away of the curbing from the pavement was caused by any sudden event or even any action that occurred in a relatively short period of time. There was no unusually heavy rain storm that would cause so much water to rush down the driveway that that alone would cause the curbing to break away. In all likelihood the intermittent pressure of rain water running against it from time to time over an extended period of time caused it to break away. We might add that even if it had been proven that the break in the curb was caused by a particularly heavy storm, there is no evidence that this alone could have been responsible for the damage. This might have simply accelerated the gradual progressive deterioration that had been going on for *103 some time. Petitioner's effort to prove that the concrete slab and retaining walls were properly designed and constructed are to no avail. He must prove that some identifiable event such as an accident, mishap or sudden invasion by a hostile agency was the cause of the damage. This he has failed to do. We therefore conclude that petitioner is not entitled to a deduction for a casualty loss in 1976. [4]
Decision will be entered for respondent.
Footnotes
1. The statutory notice of deficiency was issued to petitioner, James J. Pryor, and his wife, Iris H. Pryor. However, only petitioner filed a petition with the Court.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the taxable year in issue. ↩
3. Due to our holding, it is unnecessary to determine the amount of the damage or loss.↩
4. For cases reaching the same conclusion on somewhat similar facts, see Matheson v. Commissioner,54 F.2d 537 (2nd Cir. 1931), affg. 18 B.T.A. 674 (1930); Portman v. U.S.,683 F.2d 1280 (9th Cir. 1982); Purdy v. Commissioner,T.C. Memo. 1966-186; Rountree v. Commissioner,T.C. Memo. 1968-165↩.