T.C. Summary Opinion 2003-168

UNITED STATES TAX COURT

PAMELA S. COOPER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8859-02S.               Filed December 17, 2003.

Pamela S. Cooper, pro se.

<u>Jeffrey C. Venzie</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|---|---|---|
| [1]1995 | $1,380 | $532 |
| 1998 | 12,968 | 3,242 |

[1] The Court permitted respondent to amend his answer to assert a claim for an increased deficiency for 1995 in the amount of $7,651 and an increase in addition to tax in the amount of $1,725.75. Thus, the deficiency in dispute for 1995 is $9,031 and the addition to tax in dispute for that year is $2,257.75. The increase in deficiency and addition to tax is based on respondent's claim that the notice of deficiency for 1995 incorrectly assumed that $7,651 was assessed. Respondent asserts that the assessment had been erroneously abated prior to issuance of the notice of deficiency.

The issues for decision are: (1) Whether petitioner is entitled to all or any part of a claimed casualty loss deduction, and (2) whether the petitioner is liable for the additions to tax for late filing pursuant to section 6651(a)(1), as determined by respondent. Additional adjustments in the notice of deficiency are computational in nature and will flow from our resolution of the casualty loss issue.

Background

Some of the facts are stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing her petition, petitioner resided in Tinton Falls, New Jersey.

Petitioner purchased her home in Tinton Falls, New Jersey, in 1985, where she continued to reside until sometime in 1995. The existing washing machine in the house was conveyed to petitioner at the time of purchase.

On the morning of August 26, 1994, petitioner went to see her insurance agent about miscellaneous insurance matters. At the meeting, she was advised that her homeowner's policy had expired. She purchased a new homeowner's policy with Mercer Mutual Insurance Company (Mercer or insurance company) that morning. When petitioner arrived home on the evening of August 26, she discovered that her home was flooded. The cause of the flood was identified as a split in the hose connecting from the sink to the washing machine. As a result, the house which is on a concrete slab, became water soaked. Carpets and furniture were destroyed. Mold and mildew began to appear throughout the house within a few days. Petitioner and her daughter had to temporarily move out of the house. Petitioner, who described herself as a collector, had many boxes and other items stored in her home. Petitioner incurred expenses to remove water-soaked items from the house and for general cleanup and repair. The cleanup and repair process took many months and was delayed, at least in part, because of disputes between petitioner and her insurance company.

In December 1994, petitioner filed a claim for insurance loss with Mercer. The cause and origin of the loss was described as "washing machine hose had a small split". Petitioner listed the amount of the loss as "Partial loss and damage claimed and estimated (as of 12/2/94) $38,040.73 Cost of loss is still mounting because of loss of use, lack of storage space, lack of funds, inconvenience." Attached to the claim form are numerous pages of schedules of listed property. A hand-written list prepared about the same time reflected the following categories and amounts of claimed loss:

Total Estimates and Partial List as of 12/2/94
(3 months after flooding--still no payment)

| | List | Estimate or Cost | Total |
|---|---|---|---|
| Part A | Loss of work | | $4,334.58 |
| Part B | Loss of vacation | | 4,482.00 |
| Part C | Loss of use | | 1,954.00 |
| Part D | Meals out | | 2,184.00 |
| Part E | Transporting | | 964.55 |
| Part F | Salvage | | 1,023.00 |
| Part G | Storage (so far) | | 1,052.64 |
| Part H | Loss of property | | 7,387.00 |
| Part I | Damaged goods | $500.00 | 500.00 |
| Part J | Appliances | 1,562.00 | 1,562.64 |
| Part K | Repair to home | 7,039.46 | 7,039.46 |
| Part L | Move vs. Trailer & storage boxes | 1,600.00 | 1,600.00 |
| Part M | Carpet | 3,957.50 | 3,957.50 |
| | Total Partial Claim as of 12/2/94 | | [1]$38,040.73 |

[1] We note that the correct total is $38,041.37, which varies by an immaterial amount of $0.64 from what petitioner had calculated and listed as her total partial claim.

Mercer initially refused to pay any insurance benefits in response to petitioner's claim. The insurance company questioned whether the flood and resulting damage occurred prior to the policy's taking effect. Petitioner brought suit against Mercer in 1995, in the Superior Court of New Jersey. On July 31, 1998, petitioner received a payment of $12,500 from Mercer in settlement of her lawsuit and claim. The record does not reflect how the $12,500 amount was computed.

Petitioner also had been having financial difficulties since approximately 1989. She stopped paying her mortgage and was being threatened with foreclosure. In 1993, the Metropolitan Savings Bank commenced foreclosure proceedings on petitioner's residence. On April 27, 1995, the property was sold for $108,750 by the Sheriff of Monmouth County, New Jersey.

Tax Returns

Petitioner filed her 1994 Federal income tax return on December 7, 1996. On Form 4684, Casualties and Theft, petitioner reported a total casualty loss in the amount of $102,741[1] as a result of the flood on August 26, 1994. After statutory reductions, petitioner deducted on Schedule A--Itemized Deductions, the amount of $95,311.
The copy of petitioner's 1995 Federal income tax return in the

---

[1] Amounts reflected on the tax returns have been rounded to the nearest full dollar amount.

record is stamped received by respondent on December 7, 1998.
Respondent's records do not reflect a 1995 tax return filed prior
to that date. On her 1995 Federal income tax return, petitioner
claimed a casualty loss deduction in the amount of $47,472, which
was a carryover from the 1994 return. Petitioner filed her 1998
Federal income tax return on January 3, 2000. Petitioner had
requested and been granted an extension to file until August 15,
1999. There is no record of any further request or granting of
an extension. Attached to the Federal income tax return is Form
4684, Casualty and Thefts. On her 1998 return, petitioner
reported a total casualty and theft loss of $138,479 and claimed
a loss deduction of $130,851. On the Form 4684, petitioner
calculated the casualty loss as follows:

|  | Real Property | Personal Property |  |
| --- | --- | --- | --- |
| Cost | $100,000 | $216,330 |  |
| Insurance reimbursement | 10,000 | --- |  |
| Fair market value before casualty | 142,000 | 112,059 |  |
| Fair market value after casualty | 100,000 | 5,580 |  |
|  | $42,000 | $106,479 |  |
| Less insurance | (10,000) | --- |  |
|  | $32,000 | $106,479 |  |
| Total |  |  | $138,479 |
| Less $100 |  |  | (100) |
| Less 10% of adjusted gross income |  |  | 7,528 |
| Claimed loss deduction |  |  | $130,851 |

Petitioner allocated $10,000 of insurance reimbursement to the real property. At about the same time as the filing of the 1998 return, petitioner also filed a Form 1045, Application for Tentative Refund. Petitioner sought to carry back the casualty loss claimed on the 1998 return to the 1995 through 1997 tax years. The application for tentative refund was denied by respondent. Also, during the year 2000, petitioner submitted[2] a Form 1040X, U.S. Amended Individual Income Tax Return, for 1994. In the Form 1040X, petitioner sought to reverse the claimed casualty loss deduction of $95,311 on the theory that it was now being claimed on the 1998 return and carried back to 1995.

Respondent's position is that petitioner has not established that the failure of the washing machine hose, and subsequent damage, constitute a casualty within the meaning of section 165. Respondent does not dispute that if a casualty occurred, 1998 would be the proper year to claim the loss. Respondent further argues that even if a casualty occurred, that petitioner has not presented sufficient evidence to prove the amount of the casualty.

Discussion

---

[2] The record does not reflect whether the Form 1040X for 1994 was filed, or whether a remittance was sent with the amended return. Given respondent's position in this matter, we assume that petitioner did not receive the benefit of the casualty loss deduction claimed on the 1994 return as originally filed and after consideration of the Form 1040X revising the claimed casualty loss deduction.

Deductions are a matter of legislative grace, and generally the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The burden of proof has not shifted to respondent pursuant to section 7491(a). While the examination of the tax returns in issue commenced after July 22, 1998, petitioner has not satisfied any of the criteria of section 7491(a)(2)(A) and (B).[3]

Casualty Loss

Section 165(a) and (c)(3) allows an individual a deduction for loss of property not connected with a trade or business or a transaction entered into for profit if the loss arises from fire, storm, shipwreck, or other casualty and was not compensated for by insurance or otherwise. "Other casualty" is defined as a loss proximately caused by a sudden, unexpected, or unusual event, excluding the progressive deterioration of property through a steadily operating cause or by normal depreciation. Maher v. Commissioner, 680 F.2d 91, 92 (11th Cir. 1982), affg. 76 T.C. 593 (1981); Coleman v. Commissioner, 76 T.C. 580, 589 (1981). There

---

[3] As previously noted, respondent asserts an increased deficiency and increased addition to tax for 1995. While Rule 142(a) provides that the burden of proof shall be on respondent to the extent that there is an increase in deficiency, the claimed increase results from a computational issue, the abatement of an assessment by respondent. Petitioner does not dispute the claimed corrected computation of the deficiency. Thus, the burden of proof remains with petitioner to establish the existence of and amount of the casualty loss.

must be a causal connection between the alleged casualty and the loss claimed by the taxpayer. Kemper v. Commissioner, 30 T.C. 546, 549-550 (1958), affd. 269 F.2d 184 (8th Cir. 1959).

A casualty loss not connected with a trade or business or a transaction entered into for profit is deductible under section 165(h) only to the extent (1) the loss exceeds $100, and (2) the net casualty loss exceeds 10 percent of the adjusted gross income of the taxpayer. The amount of the casualty loss from a partial destruction of property is the lesser of the taxpayer's adjusted basis of the property or the difference in the property's fair market value immediately before and after the casualty. Sec. 1.165-7(b)(1), Income Tax Regs. The amount of the loss is reduced by any insurance recovery and salvage value. Sec. 165(a); sec. 1.165-1(c)(4), Income Tax Regs. To establish the amount of the loss, the relevant fair market values of the property "shall generally be ascertained by competent appraisal" conducted in a manner to ensure that any casualty loss deduction "be limited to the actual loss resulting from damage to the property." Sec. 1.165-7(a)(2)(i), Income Tax Regs. As an alternative, the taxpayer may use the cost of repairs to prove the casualty loss (the cost of repairs method). See sec. 1.165-7(a)(2)(ii), Income Tax Regs.

Whether damage qualifies as a casualty typically turns on whether the damage satisfies the suddenness requirement, which denotes an accident, a mishap, some sudden invasion by hostile agency rather than progressive deterioration of property through

steadily operating cause.  <u>Fay v. Helvering</u>, 120 F.2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940).  In considering whether termite damage qualified as a casualty, we have held that the "suddenness" of the loss itself (the lapse of time between the precipitating event and the loss proximately caused by that event) is a determining factor.  <u>Maher v. Commissioner</u>, 76 T.C. 593, 599-600 (1981), affd. 680 F.2d 91 (11th Cir. 1982); <u>Pryor v. Commissioner</u>, T.C. Memo. 1987-80.

Respondent, relying upon the cases relating to progressive deterioration, suggests that the failure of the hose connection and ensuing damage to the house and personal property do not constitute a casualty, because the deterioration occurred during an extended period of time.  In this regard, it would appear appropriate to separate (1) the damage to the washing machine hose from (2) the consequential water damage resulting from the failure of the hose.  We conclude that the damage to the washing machine hose resulted from progressive deterioration.  The washing machine was included with the purchase of the house in 1985.  Thus, the washing machine and hose connection were at least 9 years old when the hose failed.  It is not unusual that a rubber hose would deteriorate over a period of years and ultimately fail.  We conclude that the failure of the washing machine hose was the result of progressive deterioration and not the result of a sudden event.  Thus, the failure of the hose does

not constitute a casualty within the meaning of section 165(c)(3).

Our inquiry, however, does not end there. The damage to petitioner's home and personal belongings directly resulted from the failure of the washing machine hose. The water damage to petitioner's house and personal belongings was the result of an identifiable event, sudden in nature. The failure of the hose was the precipitating event, and the flooding immediately thereafter was proximately caused by the event. The damage resulting from the flood in the house is a casualty within the meaning of section 165(c)(3). The Commissioner has recognized the distinction between damage to equipment, which was gradual, and consequential damage resulting from failure of the equipment. In Rev. Rul. 70-91, 1970-1 C.B. 37, the Commissioner held as follows:

> A taxpayer suffered rust and water damage to his rugs, carpets, and drapes when the water heater in his one-story dwelling burst from normal deterioration (rust and corrosion) over a period of time and flooded a portion of the house with water. The taxpayer had no insurance to reimburse him for these losses.
>
> Held, since the rust and corrosion of the water heater itself was gradual and progressive, its loss is not a casualty within the meaning of section 165(c)(3) of the Internal Revenue Code of 1954.
>
> Held further, the rust and water damage to the rugs, carpets, and drapes caused by the bursting of the water heater was the result of an identifiable event, sudden in nature, fixing a point at which the loss to the damaged property can be measured, and was also unexpected or unusual in the context in which the damage occurred. Therefore, such damage is a casualty within the meaning of section 165(c)(3) of the Code, and the taxpayer is entitled to a nonbusiness casualty

loss deduction. The amount of the damage is the lesser of either (1) the difference between the fair market value of the property immediately before and immediately after the casualty, or (2) the adjusted basis of the property. That amount reduced by $100 is allowable as a casualty loss deduction.

The Commissioner has neither revoked nor modified Rev. Rul. 70-91, supra.[4] Revenue rulings are not binding on this Court, or other Federal courts for that matter. Rauenhorst v. Commissioner, 119 T.C. 157, 171 (2002). However, they may serve to bind the Commissioner in cases in which a longstanding revenue ruling that has not been revoked or modified is relevant to our disposition of the case. Id. at 173. Under such circumstances, we have treated the revenue ruling as a concession by the Commissioner. Id. at 171-173.

Such treatment of Rev. Rul. 70-91 is warranted in the present case. We conclude that the dichotomy expressed in the revenue ruling comports with the casualty loss provisions of section 165. Based on this conclusion, we hold that petitioner is entitled to a casualty loss deduction for water damage to her house and personal belongings to the extent substantiated.[5]

Substantiation of Loss

Petitioner presented varied disorganized records to substantiate the loss. Likewise her testimony was often vague

---

[4] Indeed, the Commissioner has relied upon it in issuing a private letter ruling. See Priv. Ltr. Rul. 8341012 (July 7, 1983).

[5] Any claimed loss to the washing machine hose connection would not be allowable, nor does the record reveal a separate claim for such loss.

and confusing.  Nevertheless, we are satisfied that she suffered a loss and do our best to reconstruct the amount of the loss.  In this connection, the claimed loss falls into two categories: (1) Real property (the house), and (2) personal property.

With respect to the real property loss, petitioner claims that the fair market value of the house immediately before the casualty was $142,000 and that the fair market value immediately after the casualty was $100,000.  Petitioner testified that she received an appraisal of the house before the casualty; however, she did not present it to the Court.  Ordinarily an appraisal is required.  Sec. 1.165-7(a)(2)(i), Income Tax Regs.  As previously indicated, the regulations also permit the cost of repairs as evidence of the amount of loss.  Sec. 1.165-7(a)(2)(ii), Income Tax Regs.  However, this must be the cost of repairs actually made, not merely an estimate of the cost.  Lamphere v. Commissioner, 70 T.C. 391, 395 (1978).  Further, the sale of the house by foreclosure in 1995 for $100,000 (the same amount reflected as the cost basis in 1984) does not provide us with a means of determining the amount of any loss.  There is not sufficient evidence in this record to allow petitioner any loss with respect to the house itself.

We now consider the amount of the loss with respect to personal property.  Petitioner claimed a loss of $106,479.[6]

_____

[6] We note that petitioner submitted not less than four separate and different schedules of claimed loss.  We have reviewed and considered all the schedules of claimed loss in this
(continued...)

Petitioner's schedule of loss on the 1998 return reflects the fair market value of personal property before the casualty as $112,059 and the fair market value after the casualty as $5,580. We are satisfied that petitioner did incur some loss. Most of petitioner's personal belongings, including clothing, furnishings, carpeting, and books, were completely destroyed. We accept petitioner's assertion as to the fair market value <u>after</u> the casualty, namely $5,580. We, however, do not accept petitioner's assertion as to the fair market value <u>before</u> the casualty and instead do our best to approximate a reasonable value. <u>Cohan v. Commissioner</u>, 39 F.2d 540, 544 (2d Cir. 1930). Further, petitioner is not entitled to a deduction for moving or storage costs since such expenditures do not represent a loss of property value. <u>Millsap v. Commissioner</u>, 46 T.C. 751, 762 (1966), affd. 387 F.2d 420 (8th Cir. 1968). Accordingly, the

[6](...continued)
record in an attempt to make some rational sense of petitioner's confusing records.

following represents our conclusion as to the amount of
petitioner's loss:

| Item | Fair Market Value Before the Casualty or Other Cost Related to Casualty |
|---|---|
| Personal item including clothing | 17,500 |
| Furniture | 20,000 |
| Miscellaneous | 3,000 |
| Carpet | 5,500 |
| Total | $46,000 |
| | |
| Fair market value before casualty | $46,000 |
| Fair market value after casualty | 5,580 |
| Balance | $40,420 |
| Less insurance | (12,500) |
| Casualty Loss | $27,920 |

We conclude that petitioner is entitled to a casualty loss
in the amount of $27,920, as computed above, prior to any
statutory reductions.  Sec. 165(h).

Additions to Tax Under Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax of 5 percent
per month of the amount of tax required to be shown on the
return, not to exceed 25 percent, for failure to timely file a
return.  The addition to tax under section 6651(a)(1) is imposed
unless the taxpayer establishes that the failure was due to
reasonable cause and not willful neglect.[7]  The record does not

_____

[7]  Sec. 7491(c) provides that the Commissioner has the
burden of production in any Court proceeding with respect to
(continued...)

establish that the failures to timely file returns for 1995 and 1998 were due to reasonable cause and not willful neglect.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[7](...continued) liability for an addition to tax.  Further, respondent has the burden of proof with respect to the increased addition to tax for 1995.  Rule 142(a).  Respondent has established that the tax returns for 1995 and 1998 were not timely filed.