**Arthur B. MAURER and Mary E. Ford Maurer, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. KC–919.**

United States District Court
D. Kansas.

Sept. 24, 1959.

John K. Dear (of Carson & Dear), Kansas City, Kan., and Elmer B. Hodges, Kansas City, Mo., for plaintiffs.

Milton P. Beach, Asst. U. S. Atty., Kansas City, Kan., and Deane E. McCormick, Jr., Atty., Tax Division, Washington, D. C., for defendant. Charles K. Rice, Asst. Atty. Gen., and James P. Garland, Atty., Dept. of Justice, Washington, D. C., were with them on the brief.

STANLEY, District Judge.

The plaintiffs brought this suit to recover internal revenue taxes and interest thereon, which they alleged had been erroneously and illegally assessed and collected for the tax year 1954. It was their contention that they had suffered a casualty loss in that year, for which deduction should have been allowed.

27. See Wilshire & Western Sandwiches v. Commissioner, supra.

The Internal Revenue Service disallowed the claimed deduction and additional taxes were assessed. The plaintiffs paid the additional taxes, together with interest, on May 11, 1956. Following a claim for refund based upon the disallowed casualty deduction, and after expiration of the required waiting period, plaintiffs instituted this action.

A jury trial was had with respect to the determination of the question as to whether the destruction of trees and shrubs on plaintiffs' land, allegedly caused by drought conditions, was a "casualty loss" within the scope and purview of § 165, Title 26 U.S.C.A. The jury, returning a special verdict, found that the loss was caused by drought, that there was a casualty, and that the market value of plaintiffs' residential property had been reduced by the sum of $10,000.

The question, which by agreement of the parties was left for the Court to determine, was whether the casualty loss was deductible from ordinary income in its entirety and without consideration of the capital gains which the plaintiffs may have had during that income period, or whether the loss should first be applied against the capital gains which the plaintiffs may have had during that year and the provisions of § 1231, Title 26 U.S.C.A., applied.

It is the plaintiffs' contention that § 1231 applies only to a loss where there has been an involuntary conversion *into other property or money*—that there must be some other property to replace that which has been destroyed before this section has any application to a § 165 loss. Thus, in the situation before the court, had insurance been in force providing coverage on the trees for drought damage, any loss which was sustained by converting the trees into money would be subject to § 1231. By this reasoning, plaintiffs would penalize those who insure their property and would permit favored treatment to the uninsured. Clearly, this result is not intended by Congress; nor would such treatment be appropriate or proper under the statutes.

Section 165 of Title 26 U.S.C.A. provides in substance that any loss not compensated for by insurance or otherwise shall be allowed as a deduction. However, it further limits such losses in the case of individuals, as applicable here, to those losses to property not connected with a trade or business, which are caused by or "arise from fire, storm, shipwreck, or other casualty, or from theft."

Section 1221 of Title 26 U.S.C.A. defines a capital asset as being property held by a taxpayer, whether for business purposes or for personal use, with certain exceptions not applicable here.

Section 1231 of Title 26 U.S.C.A. provides that if the gains on sales or exchanges of property used in the trade or business, plus the gains from involuntary conversions of property used in the trade or business and capital assets held for more than six months into other property or money, exceed the losses from *such* sales, exchanges and conversions, then these gains and losses are to be given treatment as though they were gains or losses from sales of capital assets held for more than six months. However, if *such* losses (from sales, involuntary conversions, etc., of capital assets) exceed such gains, then they are not to be treated as resulting from sales of capital assets but would be treated as ordinary income gains or losses. The statute then provides:

"For purposes of this subsection

\* \* \* \* \* \*

"(2) losses upon the destruction, in whole or in part, \* \* \* of property used in the trade or business or capital assets \* \* \* shall be considered losses from a compulsory or involuntary conversion."

From this it is evident that where a loss is sustained when a capital asset is destroyed in such manner as to be a deductible loss (§ 165), it is to receive the same treatment as would a similar loss if compensation were made in part from insurance or other source.

The "definition" quoted above extends the reach of the statute to those losses

for which no compensation is made. The first sentence of § 1231 covers involuntary conversions into other property or money, and without the "definition" the section would have no application to an uncompensated loss. The statute applies to both compensated (in whole or in part) and uncompensated losses from the destruction of a capital asset.

Nothing appears in the brief submitted on behalf of the defendant with respect to its motion for judgment notwithstanding the verdict of the jury. Defendant's motion will be denied.

As the amount of the loss sustained by the plaintiffs does not determine in itself the amount of refund to which they are entitled, the parties should agree as to the amount of refund through a recomputation of the amount of income tax due for the taxable year 1954 and judgment will then be entered in favor of the plaintiffs for the difference between that amount and the amount which they have paid for that year.

Counsel will prepare and submit an appropriate order.

Dated at Kansas City, this 24th day of September, 1959.