JACK M. SHORT AND MARTHA G. GRIMM, F.K.A. MARTHA G. SHORT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Short v. Commissioner
Docket No. 21362-86.
United States Tax Court
T.C. Memo 1988-40; 1988 Tax Ct. Memo LEXIS 43; 55 T.C.M. (CCH) 54; T.C.M. (RIA) 88040; February 9, 1988. Jack M. Short and Martha G. Grimm, pro se Leroy D. Boyer, for the respondent TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency of $ 11,546 in petitioners' Federal income tax for the calendar year 1982. After concessions by petitioners as to all other adjustments in the notice of deficiency, the issue for decision is whether petitioners are entitled to a casualty loss deduction under section 165(c)(3). [1]
This case was submitted as fully stipulated *44 under Rule 122. The stipulation of facts, which includes the testimony which each of the petitioners and respondent's Evaluation Engineer, Paul H. Meade, would have given if they had been called to testify, and the accompanying exhibits are incorporated herein by this reference. Petitioners resided in Tulsa, Oklahoma, at the time they filed their petition. They were husband and wife on December 31, 1982, and filed a timely joint Federal income tax return for the calendar year 1982 with the Internal Revenue Service Center in Austin, Texas. The Tulsa, Oklahoma, area suffered a severe drought in mid-1980. Tulsa County and other Oklahoma counties were declared disaster areas by the Small Business Administration on September 24, 1980, because of physical damage caused by the drought. In late-1981, petitioner Martha Grimm noticed some fine cracks in the walls of petitioners' Tulsa residence, but since they were barely discernable to her, she considered them inconsequential and of little concern. In the late summer of 1982, she observed further damage to the residence including hard to open exterior and interior doors, cracks in several walls, gaps between the walls and ceilings, *45 cracks in the north brick wall and in the front porch, patio, sidewalks and driveway, loosened mortar, and a retaining wall which leaned several inches. The residence was built in 1957. Petitioner Martha Grimm had lived in it since 1976 and had not observed any significant structural damage before the late summer of 1982. An engineering report, obtained by petitioners and dated February 11, 1983, listed numerous cracks and evidence of movement both inside and outside the residence. The report went on to state: It is our opinion that the initial cause for all of the above damage was the drought of 1980. * * * We feel that the following sequence of events were the most likely causes for the damage to your house. In 1980, the soil at your house started to dry out. In 1981 the soil dried out further. As the soil dried, it shrank. The soil at the exterior of the house shrank faster than the soil under the interior of the house because of more exposure to sun and wind. Because the exterior soil shrank more, an inbalance of pressure was produced which pressed on the interior of the footing-stem wall system. This pressure caused the foundations, and hence the exterior walls *46 to "roll" outward. Because this action was not uniform, a twisting of the entire house ensued. This twisting action split sheet rock walls and caused doors to be misaligned. During the latter part of 1981, the soil beneath the interior of the house shrank enough to cause visible damage. The uneven shrinking of the soil produced uneven support for the sidewalk, patio slab, and driveway, resulting in damage to them. [Emphasis supplied.] The engineering report estimated the cost of repairing the damage listed at $ 30,000. As of March 2, 1983, the market value of the residence undamaged was $ 72,500 and the market value taking the structural damage into consideration was $ 47,500. Petitioner expended $ 11,595 in partial repairs to the residence. In deciding whether petitioners are entitled to a casualty loss deduction for 1982, we are faced with the following issues: (1) is a drought an event which can properly be characterized as an "other casualty" within the meaning of section 165(c)(3); (2) under the circumstances herein, did the 1980 drought cause the loss for which petitioners seek a deduction in 1982; (3) whether any deduction to which petitioners may be found *47 to be entitled is allowable for the taxable year 1982; and (4) the proper measure of any allowable loss. The burden of proof is on the petitioners as to each of these issues. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). The fact that this case is fully stipulated does not alter that burden. Rule 122(b); Service Bolt & Nut Co. Trust v. Commissioner,78 T.C. 812, 819 (1982), affd. 724 F.2d 519, 524 (6th Cir. 1983). We are satisfied that, under appropriate circumstances, a "drought" can constitute an "other casualty" under the meaning of section 165(c)(3). [2] Indeed, respondent does not contend otherwise herein. Rather, respondent contends that petitioners' claimed loss was due to progressive deterioration and does not satisfy the "suddenness" requirement for allowing a loss from an "other casualty," and it is to this issue that we turn our attention.
We accept the finding of the engineering report that the drought was the "initial *48 cause" of the damage to petitioners' residence. But this does not end our inquiry. We must determine whether, on the record before us, the loss in question followed sufficiently closely to meet the aforementioned "suddenness" requirement or whether the lapse of time between the occurrence of the drought and the loss was sufficiently prolonged that it can be said that the loss stemmed from intervening causes, in this case dryness and soil erosion, and consequently should be characterized as progressive deterioration. See Maher v. Commissioner,76 T.C. 593, 599-600 (1981), affd. 6800 F.2d 91 (11th Cir. 1982), where we held that the "suddenness" requirement refers to "the lapse of time between the precipitating event and the loss * * * caused by the event" rather than to the "suddenness of the precipitating event." We think it is clear that the previously quoted part of the engineering report, see p. 3, supra, describes a gradual process as the foundation of petitioners' loss, which is more closely akin to progressive deterioration, with the 1980 drought *49 no more than the "initial cause" (emphasis added). [3] We are reinforced in this conclusion by the fact that all of the decided cases, which have allowed a casualty loss due to drought, involved situations where the year of the drought and of the allowable loss coincided. Elliott v. Commissioner, an unreported case ( E.D. Mo. 1966, 19 AFTR 2d 665, 67-1 USTC par. 9232); Pantzer v. United States, an unreported case ( S.D. Inc. 1964, 14 AFTR 2d 5352, 64-2 USTC par. 9641); Maurer v. United States,178 F. Supp. 223 (D. Kan. 1959), revd. and remanded on other grounds 284 F.2d 122 (10th Cir. 1960); Winters v. United States, an unreported case ( N.D. Okla. 1958, 1 AFTR 2d 644, 58-1 USTC par. 9205); Buttram v. Jones,87 F. Supp. 322 (W.D. Okla. 1943); Stevens v. Commissioner,T.C. Memo. 1984-365; Ruecker v. Commissioner,T.C. Memo. 1981-257; Charno v. Commissioner,T.C. Memo. 1971-22. [4]
*50 Perhaps petitioners' situation would have been stronger if they had claimed their loss in 1981 when there were visible signs of damage. At that point, the lapse of time would have been much shorter and the impact of the drought clearer so that there would have been a lessened potential for a "progressive deterioration" characterization of the cause of the loss. But the fact that a loss might have been allowable in another year, not before us, does not support the allowance of the loss in 1982. Cf. Kunsman v. Commissioner,49 T.C. 62 (1967). [5]
Finally, petitioners argue that respondent is estopped from disallowing the claimed loss because the loss was fully documented on the 1982 return *51 and respondent refunded the overpayment claimed on that return. Petitioners' contention is utterly without merit. Beer v. Commissioner,733 F.2d 435 (6th Cir. 1984), affg. per curiam a Memorandum Opinion of this Court; Warner v. Commissioner,526 F.2d 1 (9th Cir. 1975), affg. a Memorandum Opinion of this Court. In light of the foregoing analysis and based upon all the facts and circumstances revealed by the record herein, we hold that petitioners have failed to carry their burden of proof that they are entitled to a casualty loss deduction in 1982. We are constrained to note that, even if we had determined that a loss was allowable, we would have limited the loss to the amount of petitioners' actual expenditures for repairs. The evidence as to the drop in market value is based upon a determination as of March 2, 1983. That determination would not necessarily be the same as of the late summer of 1982. Cf. our comments in note 5, supra. In the absence of persuasive evidence as to the loss in fair market value, petitioners would be entitled to measure their loss by the actual, not estimated, amount spent for repairs. Lamphere v. Commissioner,70 T.C. 391, 396 (1978); *52 Farber v. Commissioner,57 T.C. 714, 719 (1972). In view of petitioners' concession of all other issues raised by the deficiency notice, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue code as amended and in effect for the taxable year at issue and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. See Ruecker v. Commissioner,T.C. Memo. 1981-257↩ and cases discussed therein. 3. Cf. Winter v. Commissioner,T.C. Memo. 1983-584↩. 4. Petitioners rely on Burkett v. Commissioner, a Memorandum Opinion of this Court dated Sept. 28, 1951, wherein we allowed a deduction for a hurricane loss 2 years after the hurricane occurred. To the extent that the case is entitled to any consideration herein, its rationale has been rejected. See Maher v. Commissioner,76 T.C. 593, 599 (1981), affd. 680 F.2d 91 (11th Cir. 1982). United States v. Barret,202 F.2d 804 (5th Cir. 1953), involved a situation where any↩ effect of the precipitating event, i.e., a freeze of trees, had to await the passage of time and is therefore distinguishable. 5. Cf. also Pryor v. Commissioner,T.C. Memo. 1987-80; Winter v. Commissioner, supra↩ note 3. We also note that the determination of damage in the engineering report is based upon an inspection on February 7, 1983. We have no way of determining the elements of damage which might have developed between the late summer of 1982, the latest point in time when petitioners knew that significant damage occurred, and the date of the inspection.