T.C. Summary Opinion 2009-18

UNITED STATES TAX COURT

JAMES ANTHONY GREIF, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

VANLAN  T. BUI, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket Nos. 4709-07S, 4710-07S.      Filed February 4, 2009.


Young B. Chung, for petitioners.

Alexander D. DeVitis, for respondent.


GERBER, Judge:  These consolidated cases[1] were heard

pursuant to the provisions of section 7463 of the Internal

_____

[1]These cases are consolidated for purposes of trial,
briefing, and opinion and involve coowners of realty who filed
separate petitions with respect to a casualty loss regarding
their coowned real property.  Petitioners are James Anthony Greif
and VanLan T. Bui.

Revenue Code in effect when the petitions were filed. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2003, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. For Mr. Greif's and Miss Bui's 2003 tax years, respondent determined income tax deficiencies of $9,191 and $11,447, respectively. Respondent also determined accuracy-related penalties under section 6662(a) for Mr. Greif and Miss Bui of $1,838 and $2,289, respectively. The sole question for our consideration is whether petitioners incurred a deductible casualty or theft loss during their 2003 tax years.

### Background[2]

At the time their petitions were filed, petitioners resided in Washington State. Each petitioner's 2003 Federal income tax return included a gross casualty loss of $171,163. After computational limitations, Mr. Greif claimed $164,672 and Miss Bui claimed $163,991 as a casualty loss on their respective 2003 Schedules A, Itemized Deductions.

---

[2]These cases were submitted at a Los Angeles, California, trial session under Rule 122 with the facts fully stipulated by the parties.

On May 4, 1999, petitioners purchased, for $57,100, unimproved real property (parcel) in SeaTac, Washington, with the intent of placing a personal residence on the property. The parcel was roughly square with boundaries from approximately 208 to 224 feet. The parcel had a relatively steep grade, dropping 60 feet from one side to the other. The improved real property had been appraised on April 13, 1999, at a projected value of $320,000 upon completion of the planned improvements.

Petitioners secured a $236,848 construction loan and on or about March 28, 1999, hired Gifford Olson (Mr. Olson) as a general contractor to build the residence at that price. Construction began in June 1999. Later that year it was discovered that Mr. Olson had built the driveway on a portion of the area intended for the septic system drain field. Because this deviated from the plans approved by the city and violated the King County Health Department's setback requirement, petitioners were denied an occupancy permit. Other problems included the removal of vegetation on the slopes of the property and the negligent construction of the road leading to the house. These errors created instability in the soil.

The costs to correct the various problems mounted, and after drawing $182,500 from the $236,848 construction loan, Mr. Olson abandoned the project in June 2000. At that point, the home building project was 70 percent complete. At petitioners'

request, the King County Board of Equalization reduced the assessed value of the improved real property to $23,000 on the basis that the parcel was considered "unbuildable" for lack of a sewer connection.

On September 29, 2000, Mr. Olson sued petitioners alleging that he was still owed $35,000 for materials and labor. Petitioners answered Mr. Olson's complaint, denying they owed any amount. Without setting forth a specific amount of relief, petitioners counterclaimed for breach of contract, negligence, and violation of the Washington State Consumer Protection Act. In addition to a few other complaints about Mr. Olson's performance, petitioners sought relief for the denial of the occupancy permit due to the misplacement of the road and the damage to the slope and drain field.

On March 13, 2002, Judge Michael J. Heavey, Superior Court for King County, State of Washington, issued a memorandum opinion in which he generally described the contractual dealings between Mr. Olson and petitioners as follows:

> The plaintiff [Olson] and defendant [petitioners] were both greedy. The plaintiff saw an opportunity to break into fullscale home building and the defendant saw an opportunity to get a custom home as opposed to a modular home. They ignored problems and cut corners. The contract and specifications they entered into were deficient. There was no survey of the lot corners. They both ignored that it was a difficult lot; with a challenging access, septic, and site location issues. No persons (contractor, owner, sanitarian, engineer) located the drain field and reserve drainfield areas and flagged them off. They needed serious legal, engineering, architectural and licensed sanitarian

professional help.  Their collective ignorance and greed blinded them to these realities.  Both were reluctant to fully discuss and resolve overruns.  They continually danced around these issues without fully addressing them.  There was no schedule, no change order process, no definitions of "allowance" or "default allowance", no clear statement of work, and no real specifications:  i.e., a prescription for disaster.

On the basis of those and other found facts, Judge Heavey held that Mr. Olson did not commit a deceptive trade practice but that he did default on the contract and negligently damaged the septic drain field.  Petitioners were awarded costs of obtaining a new septic field design and approval and the costs of "rockery", or a retaining wall to preserve the drain field. Petitioners were also awarded a $38,150 judgment to supplement the $40,000 remaining in the construction loan in order to finish the home.

Petitioners also filed a claim with Mr. Olson's insurance carrier seeking to recoup $280,000 of alleged damage to petitioners' parcel by Mr. Olson.  After discussions with the carrier, petitioners' attorney advised them that Mr. Olson's policy did not cover the type of damage caused to petitioners' property. Petitioners, during 2003, filed a claim under their own homeowner's policy but were denied on the basis that it covered only damage to the improvements and not the realty.  Petitioners, however, did not concede that the insurance companies were without liability.

On March 9, 2001, the King County Health Department granted Mr. Greif a waiver on the setback requirement. Petitioners were required only to submit the new plans for approval and to construct the septic system in order to obtain the occupancy permit. Neither was done, and later surface erosion invalidated the waiver. Petitioners' later requests for a new waiver were denied.

During April 2002 the city of Kent hired a geotechnical engineer to inspect petitioners' parcel of land. The engineer concluded that there was instability in the slope and roadway alignment which, if uncorrected, could result in a landslide and cause damage to the real property improvements. Petitioners subsequently hired a geotechnical engineering firm, Krazan & Associates, Inc. (Krazan), to examine the property. Krazan's report made findings similar to the city engineer's. Petitioners contend some earth movement occurred sometime between May 2002 and June 2003, resulting in the accumulation of soil along the eastern edge of the property and causing some damage to vegetation and a gate.

On November 25, 2002, petitioners filed a motion for reconsideration and clarification of Judge Heavey's March 13, 2002, memorandum opinion. In their motion petitioners pointed out that there was evidence that it would cost $153,000 to correct the problems with the road that cut across the drain

field. During a period of cross-motions in the superior court proceeding (petitioners' motion for reconsideration and Mr. Olson's motion to dismiss) Mr. Olson voluntarily entered into a liquidating bankruptcy on May 1, 2003. In the bankruptcy proceeding Mr. Greif filed a motion, that was granted, seeking to lift the stay as it related to his pursuit of Mr. Olson in the superior court proceeding. Petitioners also filed an adversary proceeding complaint objecting to the discharge of Mr. Olson's debt. Mr. Olson moved to dismiss petitioners' complaint, and on December 12, 2003, petitioners' response indicated they would not oppose the motion but would proceed with their action in Superior Court for King County. On January 8, 2004, the bankruptcy trustee filed a report of no distribution, and on May 11, 2004, Mr. Olson's claimed debt to petitioners was discharged.

Mr. Greif claimed casualty or theft losses with respect to the subject property on his 2001 and 2002 income tax returns of $23,000 and $48,000, respectively. Petitioners claimed a casualty loss for 2003 on the basis of their belief that Mr. Olson's bankruptcy rendered any relief in the superior court proceeding uncollectable and also because of their inability to recover from insurance companies. On their respective 2003 income tax returns, petitioners each claimed a $171,163 basis in the improved real property, no insurance recovery, and a fair market value of $250,000 before and $78,837 after the casualty.

During 2004 development of the surrounding area made the municipal sewer system accessible to petitioners' property. Petitioners were granted an occupancy permit, and they moved into the residence in the latter part of 2006 or early 2007. On January 25, 2007, petitioners' improved realty was assessed on the local tax rolls at $496,000, comprised of $69,000 for land and $427,000 for improvements.

On October 26, 2006, petitioners stipulated to the superior court's dismissal of their suit against Mr. Olson. In 2007 petitioners accepted $7,500 from Mr. Olson's insurance carrier in settlement of their claims.

## Discussion

The parties submitted this case fully stipulated, thereby rendering irrelevant questions about whether the burden of proof shifted. See sec. 7491(a). Petitioners, however, bear the burden of showing entitlement to casualty loss deductions. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). In addition, respondent bears the burden of production with respect to the accuracy-related penalties determined under section 6662(a). See sec. 7491(c).

## I. Casualty Loss Deduction

Under section 165(a), deductions are allowable for losses not compensated for by insurance or otherwise. In the case of an individual, section 165(c)(3), subject to the limitations of

sections 165(h), permits a nonbusiness casualty loss.  Section 165(h) sets forth dollar and percentage limitations or thresholds for claiming casualty losses.  Section 165(h) permits an individual to deduct a casualty loss only to the extent each loss exceeds $100 and the aggregate of such casualty gains and losses exceeds 10 percent of adjusted gross income.

A.  Casualty Loss

The term "casualty" is not clearly defined in the Code or the regulations.  Section 165(c)(3) mentions losses arising from "fire, storm, shipwreck, or other casualty".  In defining the term "other casualty", courts apply the rule of ejusdem generis and look for characteristics similar to those of a fire, storm, or shipwreck.  Maher v. Commissioner, 76 T.C. 593, 596 (1981), affd. 680 F.2d 91 (11th Cir. 1982).  Courts have interpreted "other casualty" to require an undesigned, sudden and unexpected event, or a sudden, cataclysmic, and devastating loss.  Torre v. Commissioner, T.C. Memo. 2001-218, affd. 52 Fed. Appx. 965 (9th Cir. 2002).

Petitioners claim two losses.  First, petitioners contend they were denied an occupancy permit because damage to the septic system drain field made the septic area unusable and significantly decreased the value of the property.  Second, petitioners contend the land was rendered unstable when Mr. Olson

removed vegetation along the slopes of the property and cut the road too steep into the hillside.

Petitioners argue that the damage to the drain field and slope was sudden because it was not caused by gradual deterioration and happened over a relatively short period. Petitioners argue that the damage was unexpected because such damage does not usually occur during the construction of homes on similarly situated properties. Petitioners correctly observe that negligence is not an automatic bar to a casualty loss deduction. See White v. Commissioner, 48 T.C. 430, 435 (1967). The foreseeability of an event or the presence of negligence does not preclude the finding that the event was a casualty. Heyn v. Commissioner, 46 T.C. 302, 308 (1966). Both are merely factors in making such a determination. Id.

Nevertheless, we hold that petitioners' losses were not casualties because neither was the result of sudden or unexpected events. Damage caused by faulty construction methods has long been held not to constitute a casualty loss. Matheson v. Commissioner, 18 B.T.A. 674 (1930), affd. 54 F.2d 537 (2d Cir. 1931). In petitioners' litigation against Mr. Olson, the court found that Mr. Olson mistakenly encroached onto the area of the septic system drain field while excavating for the driveway. Petitioners contend that the damage to the drain field site occurred instead when a subcontractor negligently drove a

bulldozer over the area. Regardless of how the drain field was damaged, the end result was the placement of the driveway over a portion of the intended drain field site. When this occurred, the location of the driveway no longer conformed with the approved plans and violated the setback requirement. For that reason, petitioners were denied an occupancy permit, and the property lost most of its value.

Casualty losses have been allowed in faulty construction cases typically where there has been a subsequent, unexpected event apart from the contractor's negligence. See Marx v. Commissioner, T.C. Memo. 1991-598 (subsequent leaks in taxpayer's roof arising from its negligent repair were a casualty loss, but the original leak from its faulty construction was not); Hayutin v. Commissioner, T.C. Memo. 1972-127 (flood damage proximately caused not by faulty construction of taxpayer's home, but by plumber stepping on unprotected pipe), affd. 508 F.2d 462 (10th Cir. 1974). Whether the encroachment onto the drain field site was the result of negligent excavation or a bulldozer running over the area is irrelevant. Denial of the occupancy permit was based on the driveway being too close to the drain field. The improper placement of the driveway is simply a matter of faulty construction. Once the driveway had been constructed, there was no later event that caused further harm to the property.

Petitioners cite the <u>Heyn</u> case as an example of the allowance of a casualty loss based on a contractor's negligence. In <u>Heyn v. Commissioner</u>, <u>supra</u> at 305, the contractor unilaterally deviated from the prescribed excavation method and was warned of the likelihood of a landslide occurring. Nevertheless, the Court allowed the casualty loss because the physical characteristics of the landslide were those normally associated with a casualty, and the landslide involved a sudden and violent movement of a large mass of earth that was cataclysmic in character. <u>Id.</u> at 307-308.

We have held that the magnitude of the taxpayer's loss is another factor to consider in the casualty loss analysis. See <u>White v. Commissioner</u>, <u>supra</u> at 434. It was the physical characteristics and magnitude of the taxpayer's loss which the Court in <u>Heyn</u> found akin to the sudden and devastating loss suffered during a fire, storm, or shipwreck.

Petitioners contend the soil instability culminated in a landslide sometime between May 2002 and June 2003. However, the record does not adequately support this contention. The geotechnical engineer's report from Krazan merely notes instability created by the removal of vegetation from the slopes and the steep angle of the driveway. The report stated that if those conditions were not mitigated, there would be an adverse effect on the property; but it made no mention of a landslide.

Similarly, a letter from the Department of the Army notes that the city's engineering manager made the same observations about the instability on the property.  This letter is dated June 11, 2003 (after the purported landslide), and also fails to mention that such an event occurred. In the absence of such an event petitioners have experienced only instability in the slopes of their property.  This is not the type of loss that can be considered sudden, cataclysmic, and devastating or the result of an undesigned, sudden, and unexpected event.

Furthermore, a taxpayer may not knowingly allow his property to be damaged or willfully damage the property himself.  See White v. Commissioner, supra at 435; Pryor v. Commissioner, T.C. Memo. 1987-80.  Petitioners were granted a waiver on the setback requirement and could have thus obtained an occupancy permit, thereby mitigating the loss they suffered.  By failing to pursue the variance, petitioners knowingly perpetuated the impediment to completion of the real property improvements.

Petitioners' loss was the product of Mr. Olson's negligent construction and not some unexpected event.  There was no devastating or cataclysmic damage to the property, such as a landslide.  Petitioners could have remedied the occupancy permit problem, but they neglected to take the necessary steps to do so. We accordingly hold that petitioners' loss was not a casualty.

B.  <u>Amount of Loss</u>[3]

The amount of a particular casualty loss deduction is limited to the lesser of (1) the difference between the fair market value of the property before and after the loss, or (2) the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of the property.  Sec. 165(b); secs. 1.165-7(b)(1), 1.165-8(c), Income Tax Regs.

Petitioners have not met their burden of establishing the amount of their loss.  They have not demonstrated the value of the property before their loss.  Petitioners purchased the parcel on May 4, 1999, for $57,100.  No appraisal was made at that time.  Petitioners did submit an appraisal performed before the purchase (dated April 13, 1999) as proof that the property was valued at $320,000.  However, the report was marked "subject to completion per plans and specifications."  Construction of the home began in June.  The encroachment of the driveway into the septic system drain field was discovered later that year, and construction had not yet been completed at that time.  Therefore, the property could not have been worth as much as the full estimated value in that appraisal report.  The next valuation of the property was

---

[3]We consider whether petitioners have established the amount of a loss because petitioners have made the generalized alternative contention that their loss was a theft loss.  Because we conclude that the amount of the loss has not been established, no further consideration need be given to petitioners' alternative contention.

not made until after petitioners' loss, when it was assessed at $23,000 for the 2000 tax year.

Petitioners have also failed to establish their adjusted bases in the property at the time of the loss. Petitioners now contend that they each had an adjusted basis of $119,725. They arrived at this number by adding the $57,100 purchase price of the parcel to the $182,500 already paid to Mr. Olson at the time he stopped work on the home in June 2000. These calculations are imprecise, and the measure of their loss has more to do with the construction of the driveway over the drain field site. Petitioners have not documented how much of the $182,500 paid to Mr. Olson was for work done afterwards. Such amounts are not properly includable in petitioners' adjusted basis at the time of the loss.

Petitioners have not provided sufficient evidence for us to determine the value of the property before the loss and their adjusted bases at the time of the loss. Both of these figures are necessary to determining the proper amount allowable as a loss. We therefore hold that petitioners have not established the amount of their loss.

C.  Reasonable Prospect of Recovery

Even when a taxpayer has suffered a casualty loss, he cannot deduct the loss if he has a claim for reimbursement with a reasonable prospect of recovery. Sec. 1.165-1(d)(2)(i), Income

Tax Regs.  Deduction of the loss is disallowed until the taxable year in which it can be ascertained with reasonable certainty whether reimbursement will be received.  Id.  This determination can be made upon a settlement, an adjudication, or an abandonment of the claim.  Id.

Courts apply an objective standard in determining whether such a "reasonable expectation" existed at the end of the year the deduction is claimed.  Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811-812 (1974), affd. 521 F.2d 786 (4th Cir. 1975).  The standard is applied with foresight, and facts not reasonably foreseeable at the close of the particular year are not considered.  Id.  The taxpayer's pursuit of litigation suggests a reasonable prospect of recovery existed but does not require such a finding.  See Halliburton Co. v. Commissioner, 93 T.C. 758, 775 (1989), affd. 946 F.2d 395 (5th Cir. 1991).  Proof of subsequent events may, however, be allowed to confirm a conclusion as to whether there was a reasonable prospect of recovery.  Id. at 774-775.

Petitioners contend that the denial of coverage by Mr. Olson's insurance carrier proves they had no reasonable prospect of recovery.  Petitioners note that their attorney advised them on January 21, 2007, that Mr. Olson's insurance policy did not, in fact, cover their claim.

Petitioners litigated the denial of coverage, and we accordingly hold that they have not met their burden of proving a reasonable prospect of recovery did not exist at the end of 2003. In Mr. Olson's 2003 bankruptcy proceeding petitioners stated that Mr. Olson's insurance carrier was liable for many of Mr. Greif's claims against him. Petitioners requested that the stay to be lifted so that they could proceed against the insurance carrier. As of December 12, 2003, petitioners indicated their intent to continue with the litigation against Mr. Olson. While petitioners' decision to litigate does not decide the issue, it does demonstrate that they had not yet abandoned their claim for reimbursement. With the ongoing litigation, it could not be ascertained with reasonable certainty that petitioners would not prevail in their suit against Mr. Olson and recover the judgment from his insurance carrier. The continuation of the litigation until 2006 and the fact that a settlement was reached in 2007 suggest that a reasonable prospect of recovery did exist.

The fact that petitioners maintained their claim for insurance reimbursement and had a reasonable prospect of recovery at the end of 2003 also militates against allowing them a casualty loss deduction.

D. Conclusion

Petitioners' loss was not of the type contemplated by section 165(c). Petitioners failed to establish the true amount

of their loss and still had a claim for reimbursement with a reasonable prospect of recovery in 2003. For these reasons, we hold that petitioners are not entitled to casualty loss deductions.

## II. Accuracy-Related Penalties

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty of 20 percent on the portion of an underpayment attributable to negligence, disregard of rules or regulations, or a substantial understatement of income tax. Negligence is defined as a lack of due care or failure to do what a reasonable person would do under the circumstances. A disregard of rules or regulations includes any careless, reckless, or intentional disregard. Sec. 6662(c). An understatement is substantial if it exceeds the greater of: (1) 10 percent of the tax required to be shown on the return for the taxable year, or (2) $5,000. Sec. 6662(d)(1)(A). Neely v. Commissioner, 85 T.C. 934, 947 (1985). Section 6001 requires taxpayers to maintain adequate records from which their correct tax liability may be determined.

Petitioners' understatements of income tax are substantial. Mr. Greif reported a tax liability of zero, whereas his correct liability was $9,191. Miss Bui also reported a tax liability of zero, whereas her correct liability was $11,447. Both understatements of income tax are substantial because they exceed

$5,000 or 10 percent of the tax required to be shown on the return.

Petitioners' underpayments are also attributable to negligence. Petitioners declared a total adjusted basis of $342,326 in their 2003 returns, but they provided no documentation as to how they arrived at this figure. Petitioners have since claimed the adjusted basis was $239,450 without explaining this discrepancy. Both petitioners claimed casualty loss deductions of $171,163. The deductions far exceed the $239,450 petitioners now claim to be the property's total adjusted basis. Even if we assume the $239,450 figure is correct and ignore the property's preloss value, petitioners' claimed casualty losses plainly exceeded the $239,450 adjusted basis limitation on their casualty loss deductions.

As discussed above, petitioners also failed to properly establish the value of the property before their loss. Petitioners claimed preloss value of $320,000 was based on an appraisal report conditioned on the completion of the planned improvements. Such improvements had not been completed at the time petitioners' loss occurred. At the time their loss occurred, petitioners should have known that the property was not worth the full value listed in the appraisal report.

Petitioners contend that they acted in good faith and with reasonable cause by relying on the advice of a tax professional.

Section 6664(c)(1) provides that the section 6662 penalty does not apply to any portion of an underpayment if reasonable cause existed and the taxpayers acted in good faith.

Reliance on the advice of a tax professional is not an absolute defense to negligence. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Such reliance does not necessarily establish reasonable cause and good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all pertinent facts and circumstances. Id. To establish good faith reliance, taxpayers must prove that: (1) They provided the preparer complete and accurate information, (2) an incorrect return was a result of the preparer's mistakes, and (3) the taxpayers believed in good faith that they were relying on a competent return preparer's advice. Estate of Goldman v. Commissioner, 112 T.C. 317, 324 (1999), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000).

Petitioners have not shown how they calculated $342,326 as their adjusted basis. They should have known that the $171,163 deduction was overstated irrespective of who chose to use that figure. Accordingly, petitioners are liable for the accuracy-related penalties under section 6662(a).

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.